UNITED STATES DISTRICT COURT
FOR MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| WALLACE SHANE WATTENBARGER ) | |
| ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Case No:_____ |
| ) | **JURY DEMAND** |
| CITY OF CROSSVILLE, TENNESSEE, ) | |
| OFFICER SAMANTHA SEAY, OFFICER ETHAN ) | |
| WILSON, OFFICER TYREL LORENZ, ) | |
| OFFICER JOSHUA MANGAS, AND ) | |
| LT. JONATHAN O'NEAL ) | |
| ) | |
| *Defendants*. ) | |

### **COMPLAINT**

Comes now the Plaintiff, Wallace Shane Wattenbarger, and for his Complaint would show as follows:

1. Plaintiff, Wallace Shane Wattenbarger ("Wattenbarger"), is a citizen and resident of Cumberland County, Tennessee. During all times relevant to this complaint, he was the Owner/Operator of RockyTop Stone Supply, LLC located at 11016 Monterey Hwy., Monterey, Tennessee 38574.

2. Defendant, City of Crossville Tennessee ("City") is a municipality within the State of Tennessee. City may served with process at 392 N. Main St., Crossville, Tennessee

38555 to Crossville Mayor RJ Crawford.

3. Defendant, Samantha Seay ("Seay"), is an officer with the City of Crossville Police Department and may be served with process at 115 Henry Street, Crossville, Tennessee 38555.

4. Defendant, Ethan Wilson ("Wilson"), is an officer with the City of Crossville Police Department and may be served with process at 115 Henry Street, Crossville, Tennessee 38555.

5. Defendant, Tyrel Lorenz ("Lorenz"), is an officer with the City of Crossville Police Department and may be served with process at 115 Henry Street, Crossville, Tennessee 38555.

6. Defendant, Joshua Mangas ("Mangas"), is an officer with the City of Crossville Police Department and may be served with process at 115 Henry Street, Crossville, Tennessee 38555.

7. Defendant, Lt. Jonathan O'Neal ("O'Neal"), is a Lieutenant with the City of Crossville Police Department and may be served with process at 115 Henry Street, Crossville, Tennessee 38555.

## JURISDICTION AND VENUE

8. This action arises out of the false arrest and infringement of Wattenbarger's

constitutional rights suffered at the hands of the individual police officer Defendants inside the city limits of Crossville, Tennessee.

9. This action arises under the United States Constitution and under the laws of the United States of America, particularly under the First, Fourth, and Fourteenth Amendments to the United States Constitution, and particularly under the Civil Rights Act, codified at 42 U.S.C. 1983 *et seq*.

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343. Further, this Court has jurisdiction over any state law claims pursuant to 28 U.S.C. § 1357 as they arise from the same case and controversies.

11. Venue is proper in the Middle District of Tennessee under 28 U.S.C. § 1391 (b)(1) and (2) as the events complained of occurred in the Middle District of Tennessee.

**FACTUAL ALLEGATIONS**

12. That the Upper Cumberland Pride ("Pride") is allegedly a non-profit, non-political group created to address, educate, coordinate, and provide aid to the LGBTQiAT community of the Upper Cumberland Region of Middle Tennessee.

13. That on June 10, 2023, Pride held an event entitled "Pride on the Courthouse Lawn." The event lasted from 12:00 PM CDT to 4:00 PM CDT and was held on the lawn of the Cumberland County Courthouse which is located at 2 N. Main St., Crossville, Tennessee 38555.

14. That the pride event called for people to bring signs, banners, and flags.

15. At least one vehicle was parked in front of the Courthouse and adorned with various Pride flags.

16. That this Pride event had been advertised widely throughout middle Tennessee.

17. That Wattenbarger decided to peacefully protest this Pride Event as he is allowed under the United States Constitution.

18. That Wattenbarger connected a horse trailer to his pickup truck with a sign that read "Queers stay from our children. You're ruining America."

19. That Wattenbarger drove his truck and horse trailer down Main Street. in Crossville, Tennessee displaying the above-referenced sign. The Pride attendees shouted vulgarities and profanities in speech and in symbol to Wattenberger.

20. That Wattenbarger drove his truck to peacefully protest the Pride event with a juvenile individual to further exercise their constitutional rights.

21. That Wattenbarger stopped his pickup truck and horse trailer in front of the Cumberland County Courthouse to protest the Cumberland Pride's message. He parked in spots in front of the Cumberland County Courthouse. The horse trailer was sticking out of parking spot very minimally. Traffic was able to pass Wattenbarger without

issue. After a brief verbal interaction with some Pride supporters, Wattenbarger pulled away from the parking spot as directed by a City officer. Sometime after Wattenbarger pulled away from the parking spot, Defendant O'Neal asked Defendant Seay to "google criminal littering."

22. That after several travels down Main Street, Wattenbarger was pulled over by one of the individually named police officer Defendants who was driving an unmarked law enforcement vehicle which was a white Chevy Silverado Pickup Truck.

23. While being detained at this traffic stop, several of the individual police officer Defendants approached Wattenbarger. Defendant O'Neal and Seay were belligerentand unprofessional. The traffic stop ended without the issuance of a traffic citation or arrest warrant. One Defendant walked away and said "if he drives back thru we will address that." It was clear the City and it officers wanted to monitor Wattenbarger for behavior that did not amount to a crime. Wattenbarger was allowed to leave without any restraint of liberty.

24. Later, Wattenbarger drove with new signs that are also constitutionally protected which read:

> " Stop Sexualising our children"
> "What is a woman?"
> "Make noise for a Queer Free America"

25. As Wattenbarger and his juvenile companion expressed their First

Amendment rights to free speech, expression, and right to assembly, Wattenbarger was detained at a traffic stop by the individual police officer Defendants at or near the intersection of 4th Street and Rector Avenue within the city limits of Crossville.

26. Wattenbarger and his juvenile companion were detained for approximately forty-five (45) minutes without any notice of the Tennessee criminal laws they allegedly violated.

27. At the traffic stop, Wattenbarger told the individual police officer Defendants, that he had a right of free speech and expression. They agreed.

28. Wattenbarger was accused of throwing dead animals in the traffic lanes on Main Street in Crossville, Tennessee. Wattenbarger told the individual police officer Defendants that he did not act in such a manner. He even told the individual police officer Defendants that he knew who actually threw the dead animals onto Main Street. The individual police office Defendants ignored his comments and did nothing to investigate that another party may have been responsible for throwing the dead animals.

29. That during his forty-five (45) minute detention Wattenbarger asked the following questions and also made a statement:

> "Who are my accusers?"
> "What law did I break?"
> "Which police officer is my accuser?"

"I want proof of what you claim I did."

30. Upon information and belief, Defendant Mangas went to Defendant O'Neal and told Defendant O'Neal that Wattenbarger demanded facts and proof. That Defendant O'Neal responded "I am taking his ass to jail." Defendant O'Neal left the scene for an extended period of time.

31. While Defendant O'Neal and Defendant Seay were gone from the scene of the traffic stop, the other individual police officer Defendants detained Wattenbarger and his juvenile companion. While in custody, the remaining individual police officer Defendants interrogated Wattenbarger and his juvenile defendant. These custodial interrogations occurred without any of the individual police officer Defendants reciting "Miranda" rights as dictated by the United States Supreme Court. The Defendants were apparently unaware of the United Supreme Court requirements in the case of *Miranda v. Arizona* 384 U.S. 436 (1966). Such failure is a failure to train and educate.

32. While being detained, one individual police officer Defendant asked Defendant O'Neal if Wattenbarger is free to leave the scene, and Defendant O'Neal states, "He is not free to leave we are going to get a warrant." This statement was made despite the individual police officer Defendants not making any credible investigation into the allegations. Also, the admission to get an arrest warrant was made even though the alleged misdemeanor committed by Wattenbarger was not committed within the presence of any

7

of the individual police officer Defendants.

33. Defendants O'Neal and Seay left the scene and acquired an arrest warrant for events that did not occur within their presence.

34. Other individual police officer Defendants placed Wattenbarger in handcuffs and placed him in a City police vehicle. After being placed in the City Police vehicle, one individual police officer defendant asked another the following:

> "What crime is he being charged with?"
> "I have no idea."

35. Wattenbarger was subsequently presented to the Cumberland County Jail without notice of his criminal charge.

36. After Wattenbarger was placed in custody, one individual police officer Defendant spoke to a tow truck operator. The tow trucker operator showed to the scene to tow Wiesenberger's truck and trailer. The tow trucker operator discussed the event with an individual police officer Defendant and the individual police officer Defendant stated, "You are allowed freedom of speech but when it becomes offensive...."

37. This statement from one of the individual police officer Defendants embodies the entire traffic stop, detention, seizure, and arrest of Wattebarger. The arrest was due to Wattenbarger expressing his freedom of speech, right to assembly, and right to petition the government for redress of grievances.

## COUNT I
## VIOLATION OF CIVIL RIGHTS-DELIBERATE INDIFFERENCE
## FAILURE TO TRAIN, FAILURE TO INVESTIGATE
## DEFENDANT CITY OF CROSSVILLE
**(42 U.S.C. § 1983)**

38. Wattenbarger incorporates by reference all allegations above as if restated fully herein verbatim.

39. In committing the acts described above, the City acted under the color of state law and with deliberate indifference to Wattenbarger's protected rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution including the right to free speech and expression, the right to assembly, the right to petition the government for redress of grievances, and the right to be free from unreasonable searches and seizures.

40. The City failed to properly investigate the allegations which lead to the June 10, 2023 arrest of Wattenbarger.

41. The June 10, 2023, arrest of Wattenbarger was the result of the City's failure to train City police officers to investigate allegations of violations of Tennessee state criminal laws. This failure exposed Wattenbarger to deprivations of his constitutional rights.

42. The June 10, 2023, arrest of Wattenbarger was the result of the City's failure to train City police officers on proper criminal procedure as dictated by the United States

Constitution and Tennessee State Constitution. This failure exposed Wattenbarger to deprivations of his constitutional rights.

43. Furthermore, the City failed to properly investigate the June 10, 2023, arrest such that they were deliberately indifferent to the protected constitutional rights of Wattenbarger.

44. This failure to train and investigate are the direct and proximate result of Wattenbarger's damages sustained because of the false arrest and infringement of his constitutional rights. Had the City properly trained all the individual police officer Defendants, Wattenbarger would have never been arrested.

## COUNT II
## VIOLATION OF THE 1ST AMENDMENT RIGHT TO FREEDOM OF SPEECH AND EXPRESSION
## ALL DEFENDANTS
## (42 U.S.C. § 1983)

45. Wattenbarger incorporates by reference all allegations contained in the paragraphs above as if restated fully herein verbatim.

46. All Defendants, acting under the color of law, arrested Wattenbarger for exercising his right of freedom of speech and expression with a juvenile passenger to protest the Pride on the Courthouse demonstration.

47. Wattenbarger's arrest was sanctioned and ratified by all Defendants.

48. These actions violate Wattenbarger's rights under the First and

Fourteenth Amendments to the United States Constitution.

## COUNT III
## VIOLATION OF THE 1ST AMENDMENT RIGHT TO ASSEMBLY
## ALL DEFENDANTS
## (42 U.S.C. § 1983)

49. Wattenbarger incorporates by reference all allegations contained in the paragraphs above as if restated fully herein verbatim.

50. All Defendants, acting under the color of law, arrested Wattenbarger for his right to assembly with a juvenile passenger to protest the Pride on the Courthouse Lawn demonstration.

51. Wattenbarger's arrest was sanctioned and ratified by all Defendants.

52. These actions violate Wattenbarger's rights under the First and Fourteenth Amendments to the United States Constitution.

## COUNT IV
## VIOLATION OF THE 1ST AMENDMENT TO PETITON THE GOVERNMENT FOR REDRESS OF GRIEVANCES
## ALL DEFENDANTS
## (42 U.S.C. § 1983)

53. Wattenbarger incorporates by reference all allegations contained in the paragraphs above as if restated fully herein verbatim.

54. All Defendants, acting under the color of law, arrested Wattenbarger for him petitioning the government for redress of grievances. While being detained,

Wattenbarger asked the individual defendants numerous questions to include:

> "Who are my accusers?"
> "Where are the facts?"
> "What law did I break?"
> "Which police officer is the accuser?"
> "What am I am being charged with?"

55. Wattenbarger's arrest was sanctioned and ratified by all Defendants.

All Defendants refused to answer his petition for the redress of grievances.

56. These actions violate Wattenbarger's rights under the First and Fourteenth Amendments to the United States Constitution.

## COUNT V
## VIOLATION OF THE 4TH AMENDMENT RIGHT TO BE FREE FROM FALSE ARREST AND UNLAWFUL SEIZURE
## ALL DEFENDANTS
## (42 U.S.C. § 1983)

57. Wattenbarger incorporates by reference all allegations contained in the paragraphs above as if restated fully herein verbatim.

58. All Defendants, acting under the color of state law, arrested Wattenbarger without probable cause and knowingly ignored exculpatory evidence and as such participated in the illegal seizure and arrest of Wattenbarger.

59. Wattenbarger's arrest was for a misdemeanor. Based upon Defendant Seay's Affidavit of Complaint, the misdemeanor was not committed within her presence.

12

In the affidavit of complaint, Defendant Seay failed to note why a citation in lieu of arrest was not issued. As Defendant O' Neal exclaimed, "his ass is going to jail." Thus , it was an unconstitutional seizure and arrest of Wattenbarger.

60. Wattenbarger's arrest was sanctioned and ratified by all Defendants.

61. These actions violate Wattenbarger's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

## **DAMAGES**

62. As a result of the conduct of each defendant named in this case Wattenbarger has suffered:

    a. Serious mental and emotional distress

    b. Loss of business income

    c. Loss of enjoyment of life

    d. Diminished reputation and standing in the community

    e. Out of expenses associated with posting bail, hiring an attorney, defending a criminal charge,

WHEREFORE, Wattenbarger presents:

i. That a jury of 12 persons be empaneled to try this case;

ii. A declaratory judgment that the Defendants' conduct violated Wattenbarger's protected constitutional rights;

iii. For nominal damages;

iv. For compensatory damages;

v. For punitive damages;

vi. Reasonable attorney's fees and litigation expenses;

vii. Pre and post judgment interest;

viii. Such other and general relief as the Court deems just.

Respectfully submitted,

___/s/ Howard Upchurch_____
Howard Upchurch, BPR # 010145
3173 Main St.
P.O. Box 381
Pikeville, TN 37367-6672
Telephone: (423) 447-2903
Facsimile: (423) 447-6672
Upchurchlaw@bledsoe.net